IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MANUELLA ORTIZ, as surviving spouse of JUAN GUTIERREZ PEREZ, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-13-32-D |
| COOPER TIRE & RUBBER COMPANY, | ) ) ) | |
| Defendant. | ) | |

# **O R D E R**

Before the Court is Defendant Cooper Tire & Rubber Company's Motion for Summary Judgment [Doc. No. 52], filed pursuant to Fed. R. Civ. P. 56, and its Motion to Exclude the Expert Opinions and Testimony of Plaintiffs' Experts, Roderick C. Moe and Craig Lichtblau, M.D. [Doc. No. 40], filed pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Plaintiffs have timely responded in opposition to the motions, which are fully briefed. Because the motions raise a common issue regarding Plaintiffs' proof of damages, and Plaintiffs adopt their arguments regarding the *Daubert* motion in their summary judgment response brief, the motions are taken up together.

This diversity case concerns the death of Juan Gutierrez Perez and personal injuries suffered by other passengers in a motor vehicle accident allegedly caused by the failure of a tire manufactured by Defendant. Plaintiffs claim the tire was defective in design, manufacture, and marketing/warning, and their Complaint asserts claims of strict products liability, negligence, and breach of warranty. Defendant moves for partial summary judgment, seeking a judgment as a matter of law on Plaintiffs' warranty and marketing

claims, and a determination of two other issues: 1) whether Plaintiffs Carlos Morales and Rolando Morales (collectively, the "Morales Plaintiffs") can recover damages for loss of future earnings in the United States; and 2) whether Plaintiff Manuella Ortiz can recover damages as Mr. Gutierrez's spouse for his alleged wrongful death and for her loss of consortium.[1] Plaintiffs do not oppose summary judgment on their cause of action for breach of express and implied warranties, and affirmatively state "Plaintiffs abandon any warranty claims." *See* Pl.'s Resp. Def.'s Mot. Summ. J. [Doc. No. 60], p.1. Therefore, the Court will grant summary judgment to Defendant on Plaintiffs' warranty claims without further discussion.

**Standard of Decision**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] Defendant does not challenge Ms. Ortiz's standing to bring the wrongful death claim on behalf of the minor children of Mr. Gutierrez.

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[2]

On June 14, 2012, Plaintiffs were passengers in a 2002 Honda Odyssey van being driven by Fidelino Castro when it was involved in an automobile accident in Texas County, Oklahoma. The accident resulted in Mr. Gutierrez's death and injured the Morales Plaintiffs. The van was owned by Abner Ocasio of Liberal, Kansas. Plaintiffs did not know Mr. Ocasio and did not know he was the owner. Mr. Ocasio had purchased the van in December 2008

---

[2] Plaintiffs did not respond to Defendant's statement of facts in the manner required by LCvR56.1(c), and did not address Defendant's assertions of fact in the manner required by Rule 56(c). Accordingly, the material facts stated by Defendant are considered undisputed, as authorized by Rule 56(e)(2), and are deemed admitted pursuant to LCvR56.1(c). In argument regarding some issues, Plaintiffs make factual assertions that are accompanied by citations to record materials, in accordance with Rule 56(c)(1). While the Court does not condone Plaintiffs' failure to follow the Local Civil Rules, all properly supported facts will be considered.

from Dua's Used Auto Sales with an odometer reading of 91,824 miles. The subject of Plaintiffs' claims is a tire that was manufactured by Defendant in April 2006. Plaintiffs have designated a tire expert to testify about alleged defects in the tire, but he is not qualified as an expert in warning defects and has not provided any opinions regarding such a defect.

The Morales Plaintiffs are citizens of Guatemala who separately entered the United States without legal authorization in 2005 and 2008. Carlos Morales obtained employment with National Beef Packing Company in Liberal, Kansas, using the name and social security number of an individual named Emmanuel Garay, who lives in Los Fresnos, Texas. Mr. Garay does not know Carlos Morales, and did not authorize the use of his identity. Carlos Morales was previously employed by Seaboard Farms but was terminated for using false identification papers and being an undocumented worker. Rolando Morales also obtained employment with National Beef Packing Company using the name and social security number of another person, Carlos Hernandez Ruiz. National Beef Packing Company complies with the Immigration Reform and Control Act of 1986 in its employment practices, and is committed to preventing the employment of unauthorized workers. The company would not permit a non-citizen employee to continue working if it discovered that the employee was not authorized to work.

Carlos Morales has not returned to work since the accident. Plaintiffs have designated an economist, Roderick C. Moe, to provide an opinion regarding Carlos Morales' economic losses, including a loss of future wages or earning capacity. Mr. Moe bases his calculation

regarding this alleged loss on the amount of wages that Carlos Morales had earned during his employment with National Beef Packing Company.

Mr. Gutierrez was living with Ms. Ortiz, his brother, Ms. Ortiz's sister, and her husband at the time of his death. Mr. Gutierrez and Ms. Ortiz were not formally married; her spousal claims depend on proof of a common law marriage. The couple did not have a joint bank account. When Mr. Gutierrez began working for National Beef Packing Company in January 2012, he was designated as "single" on tax withholding forms. He did not list Ms. Ortiz as the person to be contacted in case of a medical emergency. However, the official death certificate lists Mr. Gutierrez as married and names Ms. Ortiz as his spouse. Ms. Ortiz testified that the couple considered themselves to be married and that she referred to Mr. Gutierrez as her husband. According to the affidavit of a brother, Vincente Gutierrez, the couple considered themselves to be married, introduced themselves publicly as husband and wife, and always acted and treated each other as husband and wife.[3]

## Discussion

**A.  Plaintiffs' Defective Marketing/Warning Claim**

Defendant contends that Plaintiffs lack any evidence to establish a claim based on Defendant's alleged failure to warn consumers of a defect in the subject tire or to establish a causal connection between an inadequate warning and Plaintiffs' alleged injuries. Defendant particularly points to a lack of any expert opinion regarding an appropriate

---

[3] Plaintiffs state other facts regarding consummation of the marriage, its duration, and Ms. Ortiz's actions as a spouse after Mr. Gutierrez's death, such as arranging for his body to be buried in Guatemala. The excerpts of her deposition testimony cited in support of these facts are not included in the exhibit to Plaintiffs' brief, however, so these facts are disregarded.

5

warning. Plaintiffs respond by arguing that expert testimony is not needed where the case concerns a common consumer product, the facts concerning the dangerous condition are not complex, and evidence of other product failures show notice to Defendant of the inadequacy of its warnings. Plaintiffs do not address the issue of causation.

An essential element of an inadequate warning claim is that the defendant's failure to warn of the unreasonably dangerous characteristics of its product was the cause of the plaintiff's injuries. *See Duane v. Okla. Gas & Elec. Co.*, 833 P.2d 284, 285-86 (Okla. 1992) ("The plaintiff must establish that the failure to warn was a proximate, producing cause of the injuries received."); *Cunningham v. Charles Pfizer & Co*., 532 P.2d 1377, 1383 (Okla. 1975) ("defendant would be liable only if its failure to warn was the cause of plaintiff's injury").[4] Plaintiffs present no facts to suggest that Defendant's failure to warn of a tread separation problem in its radial tires was the proximate cause of injuries suffered by the vehicle's passengers, Mr. Gutierrez and the Morales Plaintiffs. On the present record, there is simply no basis for a reasonable finding that the accident and resulting injuries were causally related to any lack of an appropriate warning.

Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiffs' claims based on a failure to warn of an unreasonable danger.

**B.      Spousal Claims of Ms. Ortiz**

Defendant contends Ms. Ortiz cannot establish her status as Mr. Gutierrez's spouse at the time of his death. Defendant argues that Oklahoma law places a heavy burden on a

---

[4] The Court, like the parties, assumes that Plaintiffs' claims are governed by Oklahoma law. No choice of law issue is presented for decision.

person claiming a common law marriage to establish the relationship by clear and convincing evidence. *See Mueggenborg v. Walling*, 836 P.2d 112, 113 (Okla. 1992); *see also Standefer v. Standefer*, 26 P.3d 104, 107 (Okla. 2001). The Oklahoma Supreme Court recently summarized the essential elements of a common law marriage as follows: "To constitute a valid common-law marriage it is necessary that there should be an actual and mutual agreement to enter into the matrimonial relation, permanent and exclusive of all others, between parties capable of making such a contract, consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties and obligations." *State ex rel. Oklahoma Bar Ass'n v. Casey*, 295 P.3d 1096, 1100 (Okla. 2012) (internal quotation omitted).

Upon consideration of the facts shown by the summary judgment record, the Court finds that Plaintiffs have demonstrated a genuine dispute of fact regarding the existence of a common law marriage between Mr. Gutierrez and Ms. Ortiz. The facts presented by Plaintiffs all support Ms. Ortiz's claim to be Mr. Gutierrez's wife. The only fact presented by Defendant that weighs against a finding of a marriage relationship is that Mr. Gutierrez's tax withholding forms identify his status as single. No facts are provided, however, regarding who completed the forms or supplied the status information.[5] The fact that the couple did not have a joint bank account is based on deposition testimony of Ms. Ortiz that they had no bank account. The failure to list Ms. Ortiz as an emergency contact could be due to her lack of English proficiency; her deposition was taken through an interpreter.

---

[5] From the handwriting on the forms, it appears that Mr. Gutierrez signed forms completed by someone else.

7

Accordingly, even under the high standard of proof required by Oklahoma law, the Court finds that Plaintiffs have made a sufficient factual showing from which a reasonable jury could find that a common law marriage existed.

Therefore, Defendant is not entitled to summary judgment on the claims asserted by Ms. Ortiz as the spouse of Mr. Gutierrez.

**C.     Damages for Loss of Future Wages**

Defendant contends that, as a matter of law, the Morales Plaintiffs cannot claim damages for lost future earnings based on employment in the United States because they are undocumented workers who are not legally authorized to work here and who fraudulently obtained employment in the United States using false papers.

Defendant relies primarily on a United States Supreme Court decision, *Hoffman Plastic Compounds v. National Labor Relations Board*, 535 U.S. 137 (2002), which held that federal immigration policy as expressed in the Immigration Reform and Control Act of 1986 ("IRCA") precluded an award of back pay to an undocumented alien whose employment was terminated for union activities in violation of the National Labor Relations Act. The employee was not legally authorized to be present or work in the United States, but had obtained employment by utilizing another person's identification document in violation of IRCA, 8 U.S.C. § 1324c(a), and criminal law. *See Hoffman*, 535 U.S. at 148. The Court found that an award of pay "to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained by a criminal fraud" ran "counter to policies underlying IRCA" and "exceeded the bounds of Board's remedial

8

discretion." *Id*. at 148-49. The Court reasoned that "awarding backpay in a case like this not only trivializes the immigration laws, it also condones and encourages future violations" because the employee qualified for the award "only by remaining inside the United States illegally" and he could not have mitigated his damages "without triggering new IRCA violations, either by tendering false documents to employers or by finding employers willing to ignore IRCA and hire illegal workers." *Id*. at 150-51. The Court concluded "that allowing the Board to award backpay to illegal aliens would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in IRCA." *Id*. at 151.

Defendant argues that the rule of *Hoffman* should be extended to preclude damage awards in tort cases where an undocumented alien's personal injuries result in a loss of future United States wages that he could not lawfully earn.[6] Defendant contends that barring the Morales Plaintiffs from claiming lost wages at United States rates is particularly appropriate because they gained employment through fraudulent and illegal conduct. Defendant's argument is based almost exclusively on a decision of a federal district court interpreting Kansas law. *See Hernandez-Cortez v. Hernandez*, No. Civ.A 01-1241-JTM, 2003 WL 22519678 (D. Kan. Nov. 4, 2003). On similar grounds, Defendant contends the opinions of Plaintiff's experts – economist Roderick C. Moe, and rehabilitation expert Craig Lichtblau, M.D. – are irrelevant and unreliable because they have calculated Carlos Morales' damages for lost future wages and future medical expenses based on United States rates. Defendant

---

[6] Defendant does not assert a defense of federal preemption but presents its argument as one of sound public policy. Accordingly, the Court does not address the issue as one of federal preemption. *See Madeira v. Affordable Housing Found., Inc*., 469 F.3d 219, 239-49 (2d Cir. 2006) (finding IRCA did not expressly or impliedly preempt state workers' compensation law).

9

relies on rulings of federal district courts excluding as speculative and unreliable an expert economist's opinion regarding future economic damages that assumed an illegal alien would continue to work in the United States. *See Romero v. Reiman Corp.*, No. 11-CV-216-F, 2011 WL 11037890 (D. Wyo. Dec. 21, 2011); *Garay v. Missouri Pac. R.R. Co.*, 60 F. Supp. 2d 1168, 1173 (D. Kan. 1999).

Plaintiffs contend the weight of authority from other jurisdictions has not precluded undocumented workers from claiming lost future wages at United States pay rates as a matter of state tort law. They concede that some courts have excluded expert opinions regarding an illegal alien's claim for a loss of future wages if the expert failed to take into account variables unique to the individual plaintiff, such as his immigration status, a possibility of deportation, or a likelihood of voluntarily returning to his home country. Plaintiffs contend their experts have considered the personal circumstances of the plaintiff claiming lost future wages and future medical expenses, Carlos Morales, and they provide affidavits of Mr. Moe and Dr. Lichtbrau explaining the consideration of his circumstances and the experts' decisions to utilize United States wage rates and medical expenses in reaching their conclusions regarding future damages.

Upon consideration, the Court finds that the parties have not sufficiently identified or addressed the issue for decision. "A federal court sitting in diversity must apply state law as propounded by the forum's highest court. Absent controlling precedent, the federal court must attempt to predict how the state's highest court would resolve the issue." *Royal Maccabees Life Ins. Co. v. Choren*, 393 F.3d 1175, 1180 (10th Cir. 2005). Thus in this case,

the Court must predict how the Oklahoma Supreme Court would rule on the question of whether undocumented alien status is a legal bar to a tort recovery of damages for lost future wages based on employment in the United States that the plaintiff could not lawfully perform and may have fraudulently obtained.

To date, this issue has arisen only in workers' compensation cases and has been decided only by the Oklahoma Court of Civil Appeals. The holding of these cases is that illegal aliens or undocumented workers are not excluded from workers' compensation coverage, although some benefits may be unavailable due to their immigration status. *See Cherokee Indus., Inc. v. Alvarez*, 84 P.3d 798, 801 (Okla. Civ. App. 2003); *Lang v. Landeros*, 918 P.2d 404, 405-06 (Okla. Civ. App. 1996). The court reached this conclusion in *Alvarez* even though the injured employee had provided false documents to obtain employment in violation of IRCA. *See Alvarez*, 84 P.3d at 802. The court specifically rejected the employer's argument that the period of temporary total disability benefits should have ended when the employee disclosed his unauthorized status and his employment was terminated. *See id.* at 802. These cases suggest that Oklahoma courts would not bar undocumented workers from obtaining legal relief to which they are otherwise entitled based solely on their alien status or violation of IRCA. Because workers' compensation awards are a statutory matter and serve a different purpose than tort damages, however, these cases do not answer the question of whether Oklahoma would allow undocumented aliens to recover future earnings in a tort action.

The decisions of courts in other jurisdictions are split on the issue of whether a plaintiff's immigration status should preclude an award of damages for lost future wages under state tort law. *See Wielgus v. Ryobi Techs., Inc*., 875 F. Supp. 2d 854, 860-62 (N.D. Ill. 2012); *Silva v. Wilcox*, 223 P.3d 127, 132 (Colo. App. 2009). On one hand, Texas courts have held: "Texas law does not require citizenship or the possession of immigration work authorization permits as a prerequisite to recovering damages for lost earning capacity. Therefore, the fact that [the plaintiff] was not a United States citizen at the time of the accident has no bearing on his ability to recover damages for lost earning capacity." *Tyson Foods, Inc. v. Guzman*, 116 S.W.3d 233, 247 (Tex. App. 2003); *see also Grocers Supply, Inc. v. Cabello*, 390 S.W.3d 707, 721 (Tex. App. 2012) (*Hoffman* does not apply to personal injury damages). Other courts have addressed the issue as a factual matter to be decided based on the proof in a particular case. *See Ayala v. Lee*, 81 A.3d 584, 598 (Md. Ct. Spec. App. 2013) ("whether a party is entitled to United States earnings or home country earnings is a question of fact, because it necessarily depends on the jury determining the likelihood of whether or not the party will remain in the United States for the duration of the awarded compensation"); *Madeira v. Affordable Housing Found., Inc*., 315 F. Supp. 2d 504, 507 (S.D. N.Y. 2004) ("In New York, alien plaintiffs are free to establish that their earning capacity has been diminished as a result of an accident.").

Despite the lack of consensus, the Court is persuaded that Oklahoma would join the jurisdictions that have declined to erect a legal bar to recovery by an undocumented alien of compensatory damages caused by a tortfeasor, but would treat the issue as a matter of factual

proof.  Under Oklahoma tort law, "recovery may be had for all the natural and proximate consequences of the defendant's wrongful act or omission, such as pain and suffering, . . . loss of time and earning capacity, loss of profits, ill-health or disability naturally resulting from the wrong or injury, subsequent aggravations of the injury proximately traceable to the original wrong, and any other damage that can reasonably be said to have followed as the proximate consequence of the injury received." *Shebester, Inc. v. Ford*, 361 P.2d 200, 202 (Okla. 1961) (internal quotation omitted).  An award of damages for a decrease in earning capacity does not require proof of a specific loss of earnings.  *See Complete Auto Transit, Inc. v. Reese*, 425 P.2d 465, 469 (Okla. 1967) ("unemployed plaintiff is entitled to recover for loss of earning capacity").  The rule in Oklahoma is that, unless there is "no competent evidence reasonably tending to show that plaintiff's future earning capacity would be impaired," this item of alleged damages is properly submitted to the jury for consideration. *See St. Louis-San Francisco Ry. Co. v. McBride*, 376 P.2d 214, 219 (Okla. 1961).

For these reasons, the Court finds that Carlos Morales should have an opportunity to prove lost future wages in the United States or lost earning capacity based on United States wages, if warranted by the evidence.

**E.     Admissibility of Plaintiffs' Expert Opinions**

As stated above, Defendant challenges the admissibility of expert opinion testimony by Mr. Moe and Dr. Lichtblau regarding Carlos Morales' loss of future wages and future medical expenses because they "are derived exclusively from the wages and lifestyle choices of American workers using statistical average American values."  *See* Def.'s Mot. Exclude

Opinions and Testimony [Doc. No. 40], p.12. Defendant contends the experts' opinions are unreliable because they fail to account for factors that are unique to Carlos Morales, such as his immigration status, illegal United States employment, and possible deportation or voluntary return to Guatemala. *Id.*

When the opinion testimony of an expert is challenged under Rule 702 and *Daubert*, the proponent of the testimony bears the burden of establishing its admissibility. *See United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc); Fed. R. Evid. 104(a). "In performing [the district court's] gatekeeper role, the judge must assess the reasoning and methodology underlying the expert's opinion, then determine whether it is scientifically valid and applicable to a particular set of facts." *In re Williams Sec. Litigation-WCG Subclass*, 558 F.3d 1130, 1137 (10th Cir. 2009) (internal quotation omitted). The question presented by Defendant's *Daubert* Motion, which is based solely on the experts' written reports, is whether Plaintiffs can sufficiently demonstrate that Mr. Moe's and Dr. Lichtblau's methods of calculating Carlos Morales' future losses are reliably linked to the facts of his case.

In response to Defendant's Motion, Plaintiffs present the affidavits of Mr. Moe and Dr. Lichtblau explaining the facts and data on which they relied in reaching the conclusion that Carlos Morales' diminished earning capacity and future medical needs should be calculated using United States rates. Defendant's reply brief is silent concerning this additional information, and despite a footnote in the Motion regarding supplementation after the experts' depositions were taken, Defendant has never asked to file a supplemental brief. *See* Def.'s Mot. Exclude Opinions and Testimony [Doc. No. 40], p.1 n.1.

Were the Court to address the issue of the reliability of the experts' opinions based solely on the contents of their reports, Defendant's argument that the experts failed to adequately tailor their opinions to the facts of Carlos Morales' case might be persuasive. Viewed in the context of explanations provided in the experts' affidavits, however, the Court finds that their opinions are adequately supported and reliably linked to the facts of Carlos Morales' situation.

Mr. Moe explains his decision to utilize wage rates from employment at National Beef Packing Company based on immigration statistics regarding undocumented workers in the national economy, Mr. Morales' employment history and past behavior, a "statistically insignificant" possibility of deportation, and a lack of evidence that Carlos Morales would have considered returning to Guatemala if the accident had not occurred. *See* Moe Aff. [Doc. No. 57-1], ¶¶ 5-6. After considering relevant economic factors, Mr. Moe concludes that "more likely than not, the earning capacity Mr. Morales lost due to the accident prevented employment which otherwise would have occurred in the United States, notwithstanding his civil immigration status." *Id.* ¶ 6.

Dr. Lichtblau similarly explains his decision to utilize medical care standards and rates in the United States in forming his opinions regarding Carlos Morales' future medical needs. Dr. Lichtblau states his medical opinion that the level of care available in Guatemala to a person with Mr. Morales' extensive medical needs is not reasonable. Dr. Lichtblau bases this opinion on published literature regarding health care in Guatemala, his personal experience providing medical care in Central America, and documented civil rights issues

in Guatemala regarding discriminatory treatment of disabled persons like Mr. Morales, who has paraplegia. Dr. Lichtblau takes into account Carlos Morales' testimony that he has considered returning to Guatemala because he lacks family support and assistance in the United States to meet his attendant care needs; this consideration would be alleviated by Dr. Lichtblau's plan for in-home assistance. Finally, like Mr. Moe, Dr. Lichtblau considers Mr. Morales' immigration status and finds a "statistically insignificant" possibility of deportation, but Dr. Lichtblau further finds that Mr. Morales likely would qualify for a medical hardship exemption if he ever became the subject of a deportation proceeding. *See* Lichtblau Aff. [Doc. No. 57-2], ¶¶ 8-9. Finally, Dr. Lichtblau notes that unauthorized immigrants are not legally prohibited from receiving medical care in the United States.

Absent any indication that the experts' opinions are not grounded in the methodology or expertise of their respective fields, which Defendant does not suggest, the Court finds that Mr. Moe and Dr. Lichtblau have tailored their opinions regarding Carlos Morales' loss of future earnings and future medical expenses to the facts of his case. Defendant's criticisms of Mr. Moe's and Dr. Lichtblau's opinions go to the weight rather than the admissibility of their testimony.

**Conclusion**

For these reasons, the Court finds that Defendant is entitled to summary judgment in its favor on Plaintiffs' claims for breach of warranty and defective marketing or inadequate warnings. However, genuine disputes of material facts preclude summary judgment on all

other issues raised by Defendant. Further, the Court finds that the opinion testimony of Plaintiffs' economic and medical rehabilitation experts should not be excluded.

IT IS THEREFORE ORDERED that Defendant Cooper Tire & Rubber Company's Motion for Summary Judgment [Doc. No. 52] is GRANTED in part and DENIED in part, as set forth herein, and Defendant's Motion to Exclude the Expert Opinions and Testimony of Plaintiffs' Experts, Roderick C. Moe and Craig Lichtblau, M.D. [Doc. No. 40] is DENIED.

IT IS SO ORDERED this 31st day of March, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE